UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA,

                                                21-CR-335 (SJ)

    v.

                                            <u>MEMORANDUM</u>

JUSTIN HARVEY,                          <u>AND ORDER</u>

                        Defendant.
---------------------------------------------------X
APPEARANCES:

FEDERAL DEFENDERS OF NEW YORK
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201
By:    Michael D. Weil
*Attorney for Defendant*

BREON S. PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
By:    Chand W. Edwards-Balfour
*Attorney for the Government*


**JOHNSON, Senior District Judge**:

      Defendant Justin Harvey is accused of participating in an attempted

robbery and shooting that occurred on the night of March 15, 2021, in

Brooklyn, New York. The incident was captured on surveillance camera

footage, which was later shown to two witnesses who identified Harvey as the shooter. This information led law enforcement to discover a publicly available photo on Harvey's Facebook and Instagram accounts in which he wore the same sweatshirt as depicted in the surveillance footage. Based on the foregoing, the Government obtained warrants to search Harvey's apartment, social media accounts, and cellphones. Harvey was subsequently charged with attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and possessing and discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), predicated on the attempted robbery.

Harvey now brings three motions: (1) to dismiss the 18 U.S.C. § 924(c) count on the grounds that an attempted robbery is not a "crime of violence"; (2) to request a *Wade* hearing to determine whether the witness identifications should be suppressed for unreliability; and (3) to suppress the three search warrants on the grounds that they were lacking probable cause, overbroad, and insufficiently particularized.

For the reasons discussed below, Harvey's motions are **GRANTED IN PART and DENIED IN PART**.

## Background

In May and June 2021, the Government applied for warrants to search Harvey's apartment ("the Home Warrant"), Facebook and Instagram

2

accounts ("the Social Media Warrant"), and his cellphones ("the Phone Warrant") (collectively, "the Challenged Warrants"), and submitted affidavits in support of each. Magistrate Judge Peggy Kuo issued the Social Media Warrant on May 10, 2021, and the Home Warrant on or prior to May 26, 2021. On June 10, 2021, Magistrate Judge Roanne Mann issued the Phone Warrant. (Dkt. No. 19.)

The affidavits for the Challenged Warrants provided the same factual background. In or around February 2021, an individual identified as Victim-1 arranged to purchase marijuana from one Andrew Cuadrado over the messaging app Snapchat. *E.g.*, (Dkt. No. 17-2, ¶6.) On February 21, 2021, Victim-1 drove a car, with a passenger identified as Victim-2, to the designated area outside Harvey's apartment building. Upon arrival, two individuals wearing masks entered the car. (*Id.*, ¶7.) One of the masked individuals entered the front passenger seat and identified himself to Victim-1 as Andrew Cuadrado, while his co-conspirator ("CC-1") entered a rear passenger entrance and did not identify himself. (*Id.*, ¶¶8-9.) Cuadrado instructed Victim-1 to drive to another location. When the car reached a dead-end street, Victim-1 looked at the backseat and saw CC-1 holding a gun to Victim-1's head. (*Id.*, ¶10.) Cuadrado then pulled out a gun and instructed Victim-1 to hand over his money and give up the car. (*Id.*, ¶11.) After

3

providing their money to Cuadrado and CC-1, Victim-1 and Victim-2 exited the vehicle. (*Id.*, ¶12.) CC-1 then got into the driver's seat and drove off with Cuadrado. Police later recovered Victim-1's vehicle, but not the ignition key. (*Id.*, ¶13.)

In or around March 2021, an individual identified as Victim-3 arranged to sell marijuana edibles to Cuadrado over Snapchat. On March 15, 2021, Victim-3, along with individuals identified as Victim-4 and Victim-5, drove to the area of Harvey's apartment. (*Id.*, ¶14.) Victim-4 drove the vehicle, as Victim-3 and Cuadrado communicated over Snapchat to coordinate their meeting. Upon their arrival, a group of individuals wearing masks approached the vehicle. (*Id.*, ¶15.) One of the masked individuals entered the front passenger seat and asked Victim-3 to show him the marijuana edibles. Victim-3 showed them but refused to hand them over. The masked individual then attempted to grab the marijuana edibles; after failing to do so, he promptly exited the vehicle. Another masked individual then took out a gun and fired shots into the vehicle. Victim-4 was hit in the arm and leg but survived and drove away from the scene to safety. (*Id.*, ¶16.)

The affidavits explained that an officer from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") separately interviewed two witnesses familiar with the area outside Harvey's apartment building.

4

During each of the interviews, he showed the witness clips from a surveillance video that recorded the March 15, 2021, shooting. Each witness independently confirmed that one of the individuals in the recording was a resident of Harvey's apartment; one witness identified the individual as "Justin" and the other witness identified him by his apartment number and by reference to his mother. (*Id.*, ¶24.) A law enforcement database indicated that an individual named "Justin Harvey" lived in Harvey's apartment. Law enforcement officials also ran a public database search of "Justin Harvey" through social media, which identified a Facebook and Instagram account that Harvey actively used. (*Id.*, ¶25.) The ATF officer then compared an image of the individual from the March 15, 2021, surveillance recording to a public photo posted on each of Harvey's Facebook and Instagram accounts and noted that Harvey was wearing the same hooded sweatshirt in each image. (*Id.*, ¶26.) On this basis, the ATF officer believed that the individual identified by witnesses in the surveillance recording and who shot Victim-4 was Justin Harvey. (*Id.*, ¶27.) The ATF officer also interviewed Victim-3 and Victim-4 separately and showed each of them screenshots of multiple individuals from the March 15, 2021, surveillance recording. Victim-3 and Victim-4 each independently identified Harvey as the one who shot at the car. (*Id.*, ¶28.)

5

Based on this information, the affidavits claimed that there was probable cause to believe that Andrew Cuadrado was involved in both the February 21, 2021, robbery and the March 15, 2021, attempted robbery, and that there was probable cause to believe that defendant Harvey was the individual who, on March 15, 2021, approached Victim-4's car and brandished and fired a firearm, striking Victim-4 twice. (*Id.*, ¶17.)

Accordingly, the affidavits concluded that "there is probable cause to believe that violations of 18 U.S.C. § 1951(a) (Attempted Hobbs Act Robbery), and 18 U.S.C. § 2119 (Carjacking) (collectively, the "Subject Offenses") have been committed by ANDREW CUADRADO and JUSTIN HARVEY, together with others." (*Id.*, ¶3.) None of the Challenged Warrant affidavits, however, specifically alleged that there was probable cause to believe that Harvey was CC-1 or otherwise involved in the February 21, 2021, robbery and carjacking. (Dkt. Nos. 17-2, ¶17; 17-3, ¶16; 17-4, ¶18.)

A.  The Challenged Warrants

1.  Home Warrant

The Home Warrant affidavit stated that there was probable cause to believe that evidence regarding the Subject Offenses is located in Harvey's apartment because Cuadrado set the February 21, 2021, and March 15, 2021, meetings with victims in the area outside Harvey's apartment building and

6

because the surveillance camera that recorded the March 15, 2021, incident showed Cuadrado and Harvey exit and reenter Harvey's apartment building after the commission of the attempted robbery. (*Id.*, ¶30.)

The Home Warrant affidavit stated, based on the ATF officer's training and experience, that individuals engaged in criminal conduct often use devices such as cellphones to upload images and written statements reflecting that criminal conduct on social media accounts and use social media accounts to communicate with others regarding that conduct. (*Id.*, ¶32.) Accordingly, the affidavit asserted that there was probable cause to seize, *inter alia*, electronic devices and media found at Cuadrado's apartment or Harvey's apartment, on the basis that they "contain[ed] evidence of the Subject Offenses" and "constitute[d] instrumentalities of the Subject Offenses," *i.e.*, that they were used to facilitate communications with prospective victims or co-conspirators. (*Id.*, ¶¶34-35.)

The Home Warrant described the "particular things to be seized" to include "evidence of clothing worn during the commission of the Subject Offenses" and "evidence of any firearms or ammunition potentially used." (*Id.*, att. B.) It also listed "evidence of the disposition of the proceeds of the Subject Offense" and "evidence related to the carjacking that occurred on February 21, 2021, including the ignition key." (*Id.*)

### 2.  Social Media Warrant

The Social Media Warrant affidavit noted that Harvey was wearing the same sweatshirt in a photo uploaded to his Facebook and Instagram accounts that he was wearing in the March 15, 2021, surveillance recording. (Dkt. No. 17-3, ¶29.) The affidavit requested access to Harvey's Facebook and Instagram accounts and Cuadrado's Facebook, Instagram, and Snapchat accounts "to see if there is any further evidence that may link them to the commission of the Subject Offenses." (*Id.*, ¶29.)

The affidavit also explained that individuals engaged in criminal conduct often upload images and written statements reflecting that criminal conduct on social media accounts and use social media accounts to communicate with others regarding that conduct. (*Id.*, ¶30.) It further explained that individuals who use social media platforms for illicit activities often use multiple different profiles to interact with people to disguise their real identities. (*Id.*, ¶31.)

### 3.  Phone Warrant

The Phone Warrant affidavit stated that Harvey had a phone in his possession ("Device-2") when he was arrested by the NYPD on May 25, 2021, for possession of stolen property. (Dkt. No. 17-4, ¶32.) During a search of Harvey's apartment on May 26, 2021, ATF agents also found a flip phone

8

("Device-3") inside his room. (*Id.*, ¶34.) The affidavit stated that Harvey can be seen using a phone on multiple surveillance camera recordings after the shooting that occurred on March 15, 2021. (*Id.*, ¶35.)

The affidavit explained that "perpetrators of crimes, like the Subject Offenses, often communicate with their co-conspirators on devices to, among other things, plan their actions or share certain information about the potential victims." (*Id.*, ¶36.) It further stated that such individuals often use multiple devices to separate their conversations with potential victims from co-conspirators, and that they often save certain information about the commission of their crimes on their devices. (*Id.*, ¶37.) Accordingly, the affidavit claimed that there was probable cause to believe that there is evidence of the Subject Offenses on Device-2 and Device-3. (*Id.*, ¶38.) The Phone Warrant authorized the search of 11 categories of information on Harvey's phones, including "any and all digital photographs and videos, and any associated information . . . relating to the Subject Offenses" and "any internet or browser entries or history relating to the Subject Offenses." (*Id.*, att. B.)

B.  Harvey's Motions

In the instant action, Harvey makes three motions. (Dkt. No. 17.) First, Harvey moves to dismiss the 18 U.S.C. § 924(c) count, which makes it a

violation to possess, brandish, or discharge a firearm in connection with a crime of violence.

Harvey contends that an attempted Hobbs Act robbery does not constitute a "crime of violence" as defined in 18 U.S.C. § 924(c)(3)(A) because this offense may be committed without "use, attempted use, or threatened use of physical force." He concedes that current Second Circuit authority compels the Court to deny this motion, *United States v. McCoy*, 995 F.3d 32 (2d Cir. 2021), but asks the Court to hold its decision in abeyance until the Supreme Court decides the issue in *United States v. Taylor*, 20-1459.

Second, Harvey moves to suppress identification testimony or to hold a *Wade* hearing. He claims that the Government has not provided any information as to how the two witness who identified him from the surveillance camera footage knew him, his mother, or his apartment. Moreover, he claims not to know what was said to the witnesses prior to identification. Accordingly, he argues that their identifications are unreliable and asks the Court to hold a pretrial hearing.

Third, Harvey moves to suppress the fruits of the three searches conducted pursuant to the Challenged Warrants. He claims that they were not based upon probable cause because Harvey is not alleged to have used his phone, social media accounts, or any electronic devices in connection

10

with the Subject Offenses. Instead, he argues, all three affidavits rely on the generalization that individuals who commit crimes tend to use their phones and social media to record their activities and communicate with one another.

He also argues that the Challenged Warrants are overbroad. Specifically, he claims that the Challenged Warrants affidavits did not establish probable cause to authorize a search for the proceeds, and items purchased with the proceeds, of an *attempted* robbery—the only offense that the affidavits alleged Harvey to have participated in. Similarly, he claims the Phone Warrant affidavit did not establish probable cause to authorize a search of his internet or browser entries on his phone because it made no allegations about internet use.

Further, he argues that the Phone Warrant and the Social Media Warrant were insufficiently particular because they authorized searches for time periods that significantly predated the attempted robbery and shooting on March 15, 2021. The Phone Warrant sought information dating from June 1, 2020, while the Social Media Warrant contained no temporal limitation.

C.  Government Response

The Government argues that Harvey's motion to dismiss the § 924(c) count is barred by Second Circuit precedent and that Harvey fails to assert

11

that the way the witness identifications were made was unduly suggestive. (Dkt. No. 19.) Moreover, it argues that Harvey's lack of knowledge about the manner and circumstances of the identifications is not a basis to grant a *Wade* hearing.

The Government additionally opposes the suppression motion. First, the Government argues that the affidavits in support of the Challenged Warrants established probable cause, because each "set out the circumstances of a . . . robbery and carjacking on February 21, 2021, alleged to have been perpetrated by Cuadrado and CC-1 believed at the time of the warrant applications to be Harvey" and the attempted robbery and shooting on March 15, 2021, alleged to have been perpetrated by Cuadrado and Harvey.

Specifically, the Government argues that the Social Media Warrant affidavit tied Harvey to the March 15, 2021, incident because he was wearing the same distinctive sweatshirt in photos on his social media accounts as he was wearing in the surveillance footage. Because he posted photos containing evidence of his participation in the March 15, 2021, crime, the Government argues it was reasonable to assume that he also uploaded other images or written statements related to the Subject Offenses. The Government similarly argues that the Phone Warrant affidavit tied Harvey

12

to the March 15, 2021, incident because surveillance footage depicted Harvey using a phone moments after the shooting, and searching his phones for location and usage information would lead to relevant evidence of his usage of the phone and his location during the crime. Finally, the Government argues that the Home Warrant affidavit tied Harvey to both the February 21, 2021, and March 15, 2021, incidents because Cuadrado lured his victims to Harvey's apartment building on both occasions. In addition, surveillance footage showed Harvey and Cuadrado exiting and reentering his apartment building prior to and after the shooting on March 15, 2021. The Government argues that there was therefore probable cause to believe that evidence of the crimes "such as Victim [1] Car's ignition keys and/or the distinctive hooded sweatshirt" would be found during the search.

Second, the Government argues that the Challenged Warrants were properly tailored and particularized because they only authorized agents to seize items tied to the Subject Offenses, "defined explicitly to include attempted Hobbs Act Robbery and carjacking." For example, it claims that the Home Warrant allowed agents to search for information related to the February 21, 2021, robbery, including "[e]vidence of the disposition of proceeds" and "[e]vidence of the identity . . . of co-conspirators," such as CC-1. The Government further states that, "At the time these warrants were

13

executed, law enforcement had probable cause to look for additional evidence that Harvey was CC-1, and was seeking evidence to confirm that belief concerning the carjacking and robbery from February 21, 2021." (*Id.*) With respect to the Social Media Warrant and Phone Warrant, the Government argues that a temporal limitation was not required, as one of the objectives was to locate further evidence of the relationship between Cuadrado and Harvey.

In the alternative, the Government argues that the motion to suppress should be denied because the good faith exception to the exclusionary rule applies in each case. *United States v. Leon*, 468 U.S. 897, 922 (1984).

### Discussion

A.  Motion to Dismiss the 18 U.S.C. § 924(c) Count

Section 924(c) defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Harvey argues that because attempted Hobbs Act robbery—the offense with which he has been charged—may be committed without "use, attempted use, or threatened use of physical force," it cannot serve as the predicate crime for a § 924(c) conviction.

P-049

This argument has been explicitly rejected by the Second Circuit. Having previously held that Hobbs Act robbery categorically constitutes a crime of violence, *United States v. Hill*, 890 F.3d 51, 53 (2d Cir. 2018), the Second Circuit has held that "it follows as a matter of logic that an 'attempt[ ]' to commit Hobbs Act robbery—which the statute also expressly prohibits, *see* 18 U.S.C. § 1951(a)—categorically qualifies as a crime of violence." *United States v. McCoy*, 995 F.3d 32, 55 (2d Cir. 2021). Harvey's motion to dismiss that count is therefore denied. Harvey may renew his motion in the event of a change in the law that provides grounds for dismissing the § 924(c) count.

B. Motion to Suppress Identification Testimony or Hold a *Wade* Hearing

"A request for a Wade hearing is generally granted where any question is raised concerning the suggestibility of the identification procedure." *United States v. Persico*, No. CR-92-00351 (CPS), 1994 WL 36367, at *23 (E.D.N.Y. Jan. 28, 1994). Nevertheless, "[a] defendant may not baldly request a *Wade* hearing; rather he must allege facts supporting his contention that the identification procedures used were impermissibly suggestive. A 'threshold showing' of suggestiveness is necessary in order to trigger a *Wade* hearing." *United States v. Berganza*, No. 03-CR-987 (DAB), 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005) (citing *United States v. Hamideh*, No. 00-CV-950, 2001 WL 11071, at *1 (S.D.N.Y. Jan. 3, 2001)).

15

If the Court finds that the identification procedures were unduly suggestive, it must then consider whether "an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973-74 (2d Cir. 1990) (listing as factors to be considered "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation").

The Court finds that Harvey has not made out the threshold showing of suggestiveness to trigger a *Wade* hearing. Indeed, he does not allege any facts that would indicate impropriety in the identification procedures used. His claim of lacking information to make such allegations does not satisfy this requirement. *See United States v. Salomon-Mendez*, 992 F. Supp. 2d 340, 343 (S.D.N.Y. 2014) (denying request for a *Wade* hearing where defendant claimed he was "unable to know whether the procedures used were improper without a hearing on the matter").

Even assuming a *Wade* hearing was warranted in this case, it would be futile, as the Court finds that the identifications of Harvey were independently reliable. Both witnesses were familiar with Harvey's

16

apartment building, and each independently confirmed that Harvey was a resident of that building—one identifying Harvey by name and the other by apartment number and reference to his mother. Both witnesses therefore have a basis to make an in-court identification. *See United States v. Crumble*, No. 18-CR-32 (ARR), 2018 WL 1737642, at *2 (E.D.N.Y. Apr. 11, 2018) ("An in-court identification is therefore admissible, despite an improper pre-trial identification procedure, if the witness is familiar with the defendant prior to the incident.").

Because Harvey has not shown that the identification procedures were impermissibly suggestive, the motion to suppress the identification testimony or hold a *Wade* hearing is denied.

C. Motion to Suppress Evidence Obtained Pursuant to the Challenged Warrants

1. Probable Cause

"The duty of a court reviewing the validity of a search warrant is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983)). "A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding

17

the warrant." *Id.* (internal quotation marks and citation omitted). Accordingly, a defendant "who argues that a warrant was issued on less than probable cause faces a heavy burden." *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

"To be lawful under the Constitution, a search warrant must, *inter alia*, set forth evidence establishing probable cause to believe a crime has been committed and that evidence of that crime can be found in what is to be searched." *United States v. Weigand*, 482 F. Supp. 3d 224, 240 (S.D.N.Y. 2020). Whether "probable cause" exists is determined by the totality of the circumstances. The issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 238). "All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v. Lustyik*, 57 F. Supp. 3d 213, 224 (S.D.N.Y. 2014) (citing *United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008)).

18

"Once it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of *any* property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime." *United States v. Martin*, 426 F.3d 83, 86 (2d Cir. 2005) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 558 (1978)). The nexus between the thing to be searched and the alleged criminal activity "may be based on reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks and citation omitted).

Furthermore, a warrant must not be overbroad with respect to each category of evidence identified in the warrant. "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (quoting 2 W. LaFave, *Search and Seizure* § 4.6(a) (5th ed. 2012)); *see also United States v. Weigand*, 482 F. Supp. 3d at 241 ("Even where probable cause is established, still 'those searches deemed necessary should be as limited as possible,' as to avoid a 'general warrant,' *i.e.*, 'a general, exploratory rummaging in a person's belongings.'" (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

19

Even where the search warrant is subsequently found to be deficient, suppression is not warranted if the police objectively relied on it in good faith. *U.S. v. Leon*, 468 U.S. 897, 923 (1984)); *see also United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011) ("[S]uppression is 'our last resort, not our first impulse' in dealing with violations of the Fourth Amendment." (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009))). The good faith exception, however, does not apply "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923.) Although the burden is on the government to demonstrate that the good faith exception applies, "the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection." *Clark*, 638 F.3d at 100.

   a.  Home Warrant

The attempted robbery and shooting on March 15, 2021, occurred outside Harvey's apartment building, which Harvey was seen reentering following the commission of those crimes. Accordingly, the Court finds that

the magistrate had a substantial basis for concluding probable cause existed to search his apartment for evidence related to that incident, such as the clothing Harvey was wearing at the time and any firearms and ammunition that Harvey used.

Other items listed in the Home Warrant, however, clearly relate only to the February 21, 2021, robbery and carjacking. These include evidence of the disposition of "proceeds" and the ignition key of Victim A's carjacked vehicle, and which are the focus of Harvey's overbreadth challenge.

Although it does not state so explicitly, the Home Warrant affidavit contains sufficient facts to establish a nexus between Harvey's apartment and evidence related to the February 21, 2021, robbery and carjacking. *See Singh*, 390 F.3d at 182 ("A showing of nexus does not require direct evidence."). The affidavit states that Cuadrado lured his victims to the area outside Harvey's apartment building on both February 21, 2021, and March 15, 2021, and that Cuadrado and Harvey together exited and reentered that building before and after the March 15, 2021, attempted robbery. (Dkt. No. 17-2, ¶30.) Accordingly, the magistrate judge could have drawn a "reasonable inference from the facts," *Singh*, 390 F.3d at 182, that Harvey's apartment served as Cuadrado's base of operations and could be "the place of concealment of evidence" of Cuadrado's crimes. *Martin*, 426 F.3d at 86; *see also United States*

21

*v. Stewart*, No. 3:17-CR-00072 (RNC), 2019 WL 2052136, at *4 (D. Conn. May 9, 2019) ("Probable cause to search a location for contraband following a sale of narcotics may be established by observations of the seller going to the location immediately before or after the sale.").

Harvey is correct to point out that the Home Warrant affidavit did not identify him as a suspect in the February 21, 2021, robbery and carjacking. But that fact alone does not invalidate a probable cause determination that his apartment may contain evidence of those crimes. "[I]t is untenable to conclude that property may not be searched unless its occupant is reasonably suspected of a crime and is subject to arrest." *Martin*, 426 F.3d at 86 (quoting *Zurcher*, 436 U.S. at 559).

The Court is less persuaded, however, by the rationale for the seizure of electronic devices from Harvey's apartment. The affidavit did not allege that Harvey used his phone, or social media accounts that could be accessed from his phone, in relation to the Subject Offenses. Critically, unlike the Phone Warrant affidavit, the Home Warrant affidavit did not state that Harvey was recorded using his phone following the March 15, 2021, attempted robbery and shooting. *Cf.* (Dkt. No. 17-4, ¶35.) The only facts concerning electronic devices alleged in the affidavit related to Cuadrado, who communicated with victims over social media. (Dkt. No. 17-2, ¶¶29, 31.)

22

Yet the affidavit contained no facts suggesting that Cuadrado's cellphone might be found in Harvey's apartment.

Moreover, the affidavit's discussion of electronic devices was expressly related to social media activity. (Dkt. No. 17-2, ¶32.) The Court is mystified as to why there would be probable cause to seize *all* electronic devices, including those that could not connect to social media accounts— such as, presumably, the flip phone that was eventually recovered from Harvey's apartment. (Dkt. No. 17-4, ¶34.)

Bearing in mind the substantial deference owed to the magistrate's judgment, however, the Court concludes that the magistrate could have reasonably inferred that devices Cuadrado used to communicate with victims would also be found in Harvey's apartment, given his use of the area outside Harvey's apartment building.

The Court thus finds that the magistrate had a substantial basis for concluding that probable cause existed for each item described in the Home Warrant as it relates to the Subject Offenses. Accordingly, the Home Warrant was not overbroad.

b. Social Media Warrant

The Social Media Warrant affidavit set forth a thin basis for probable cause: namely, that Harvey uploaded a photo of himself wearing the same

23

sweatshirt that he also wore on the night of March 21, 2021, to his Facebook and Instagram accounts. The affidavit also generally observed that, based on the affiant's training and experience, "individuals engaged in criminal conduct often upload photographs, images and written statements reflecting that criminal conduct on social media accounts and use social media accounts, such as Facebook, Instagram, and/or Snapchat to communicate with others regarding that conduct." (Dkt. No. 17-3, ¶ 30.)

Based on these two statements, the Court doubts whether the magistrate had a substantial basis for finding that probable cause existed. Here, law enforcement was able to capitalize on Harvey's apparent carelessness in wearing the same article of clothing that appears in an undated photo on his social media. The Court does not see how that coincidence increases the probability of finding more evidence of Harvey's criminal conduct, such as "written statements," in those accounts. If such evidence were discovered, it would appear to be a product of luck.

The Court need not decide this issue because, as discussed below, it finds that the Social Media Warrant was insufficiently particularized and that the good faith exception does not apply.

Because Harvey does not identify the categories of information sought by the Social Media Warrant that were allegedly not supported by probable

cause, the Court lacks sufficient information to consider his overbreadth challenge.

     c.  <u>Phone Warrant</u>

The Court finds that the magistrate had a substantial basis for concluding that probable cause existed for the Phone Warrant. Specifically, the fact that Harvey was recorded using a cellphone moments after the March 15, 2021, attempted robbery and shooting establishes the evidentiary nexus between his cellphone and criminal activity. *See, e.g, United States v. Robinson*, No. 16-CR-545 (S-3) (ADS), 2018 WL 5928120, at *16 (E.D.N.Y. Nov. 13, 2018) ("[T]he fact that SCPD discovered the phone at the scene of the crime creates a sufficient factual nexus to justify the search.").

Harvey's overbreadth challenge is more complicated. The warrant authorized a search of various categories of information, and the relevance of some of those categories is not apparent from the affidavit. For example, the Phone Warrant authorized the search of "internet or browser entries or history relating to the Subject Offenses," even though the affidavit did not allege that Harvey accessed the internet in connection with the Subject Offenses. The Government's explanation—that Harvey's phone had internet capabilities that allowed it to connect to Snapchat, Instagram, and Facebook, (Dkt. No. 19)—is meritless for several reasons.

P-049

First, as discussed *supra*, the Phone Warrant did not allege that Harvey used social media in connection with the Subject Offenses. That Harvey might have accessed his social media accounts from his phone therefore strikes the Court as immaterial.

Second, the argument that evidence that Harvey used these devices to access his social media accounts "would establish his association with [Harvey's social media accounts] and, by extension, the distinctive sweatshirt depicted in the March 2021 robbery footage," (Dkt. No. 19), confuses the sequence of events. The Government had already obtained the Social Media Warrant based on Harvey's distinctive sweatshirt on May 10, 2021; it apparently did not need the Phone Warrant, issued one month later on June 10, 2021, to associate Harvey with the social media accounts identified in the Social Media Warrant.

Third, a search of "any internet or browser entries or history" would be unnecessarily broad for the purpose of establishing Harvey's association with his social media accounts. As noted, the Government was already aware of the specific websites that Harvey allegedly might access on his phone, *i.e.*, the mobile websites for Facebook and Instagram. It is unclear why Harvey's use of these social media services—which were already the subject of a

separate warrant—would establish probable cause to search his entire internet history.

The Government's other proffered explanation is also without merit. The fact that at the time the warrant was executed, "law enforcement had probable cause to look for additional evidence that Harvey was CC-1, and was seeking evidence to confirm that belief," (Dkt. No. 19), is irrelevant. The four corners of the Phone Warrant affidavit did not allege, or contain facts suggesting, that evidence related to the February 21, 2021, robbery and carjacking would be found in Harvey's phone.

On the other hand, Harvey's other specific objection—that the Phone Warrant sought "information related to the proceeds *or results* of the commission of the Subject Offenses," (Dkt. No. 17-4, att. B ¶c (emphasis added))—does not present similar concerns. Harvey's argument that an attempted robbery has no proceeds ignores that "results" does not require the robbery to have been successful. For example, one result of the attempted robbery was Harvey's shooting at the victims' vehicle, information related to which may be contained in the phone he was seen using immediately thereafter.

"[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United*

27

*States v. Smith,* 9 F.3d 1007, 1012 (2d Cir.1993) (citation omitted). Accordingly, the Court will defer to the magistrate judge's determination that probable cause existed for the categories of information sought. The Phone Warrant affidavit stated only that Harvey was seen "using a phone," but did not specify the manner in which he used it. The magistrate could have reasonably inferred that Harvey may have been using his phone to access any of the categories of information sought in the Phone Warrant, including the internet.

Even if the affidavit's showing of probable cause could not survive this deferential review, the Phone Warrant would also qualify for the good faith exception. The affidavit was neither so lacking in indicia of probable cause nor so facially deficient that reliance upon it was unreasonable. *Moore,* 968 F.2d at 222. There are no allegations that the magistrate had been knowingly misled or wholly abandoned her judicial role.

2. Particularity

"To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements." *United States v. Ulbricht,* 858 F.3d 71, 99 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States,* 138 S. Ct. 2206 (2018). It must (i) "identify the specific offense for which the police have established probable cause," (ii) "describe the place to be

P-049

searched," and (iii) "specify the items to be seized by their relation to designated crimes." *Id.* (internal citation omitted). "The Fourth Amendment does not require a perfect description of the data to be searched and seized." *Id.* at 100. Indeed, "[s]earch warrants covering digital data may contain some ambiguity." *Id.* (internal citation omitted).

The Court's concerns about the Social Media Warrant are compounded by its lack of temporal limitation. *United States v. Purcell*, 967 F.3d 159, 183 (2d Cir. 2020), *cert. denied*, 142 S. Ct. 121, 211 L. Ed. 2d 39 (2021) ("Where, as here, the property to be searched is digital, the particularity requirement assumes even greater importance." (internal quotation marks omitted) (citing *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013)).

"Although a temporal limitation for the data being searched is not an absolute necessity, it would appear to have been feasible to include such a limitation here." *United States v. Shipp*, 392 F. Supp. 3d 300, 310 (E.D.N.Y. 2019) (internal quotation marks and citations omitted). The Subject Offenses occurred three weeks apart in February and March 2021; it is not obvious why information generally before that period would be required to link Harvey to these relatively unsophisticated crimes. *Cf. United States v. Hernandez*, No. 09 CR 625 (HB), 2010 WL 26544, at *11 (S.D.N.Y. Jan. 6, 2010) ("The complexity and duration of the alleged criminal activities render a time

frame less significant than in a case that required a search for a small set of discrete items related to one or only a few dates.").

The Government's argument that a temporal limitation was not required because "one of the objectives was to locate further evidence of the relationship between Cuadrado and [Harvey]," (Dkt. No. 19), is not supported by the affidavit, which contained no allegations that Harvey used social media to communicate with Cuadrado. In any event, such evidence of their relationship would be redundant, as the same warrant also authorized a search of Cuadrado's corresponding social media accounts.

Given that social media accounts, like Facebook, provide "a single window through which almost every detail of a person's life is visible," *Shipp*, 392 F. Supp. 3d at 308, the Court is troubled by the warrant's unlimited temporal sweep and the lack of any plausible basis to justify it. Accordingly, the Court finds that the Social Media Warrant was insufficiently particularized.

Considering its lack of temporal limitation, combined with the questionable existence of probable cause, *supra*, the Social Media Warrant appeared to "authorize precisely the type of 'exploratory rummaging' the Fourth Amendment protects against." *Id.* at 311 (citation omitted). The Court therefore finds that the good faith exception does not apply, as the warrant

P-049

was "so facially deficient that reliance upon it is unreasonable." *Moore*, 968 F.2d at 222.

In contrast, the Court finds that the Phone Warrant was not lacking in particularity. Although it antedates the Subject Offenses by more than six months, the timeframe of the search does not raise the same concerns as a temporally unlimited warrant. Further, unlike the warrant in *United States v. Zemlyansky*, 945 F. Supp. 2d 438 (S.D.N.Y. 2013), which did not direct searching officers to seize evidence "*related to*, or *concerning*, any particular crime or type of crime," the Phone Warrant's various categories are limited to information related to the Subject Offenses. *Id.* at 456.

## Conclusion

For the reasons state above, Harvey's motions to dismiss the 18 U.S.C. § 924(c) count, request a *Wade* hearing, and suppress the Home Warrant and the Phone Warrant are DENIED. Harvey's motion to suppress the Social Media Warrant is GRANTED.

Dated: March 6, 2022
Brooklyn, New York

Sterling Johnson, Jr., U.S.D.J.

31