UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.

JUSTIN HARVEY,

                Defendant.
------------------------------------------------------------X

**ORDER**
21-CR-335 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 4, 2022, Defendant pled guilty pursuant to a plea agreement to count two of the Superseding Indictment, charging him with Attempted Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 108 months of incarceration, to be followed by two years of supervised release, restitution, forfeiture, and a $100 mandatory special assessment.

## BACKGROUND

On May 26, 2021, the Government filed a sealed Complaint and affidavit in support of an arrest warrant for Defendant. Compl., ECF No. 1. On June 23, 2021, the Government filed a two-count Indictment charging Defendant with: (1) Attempted Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951(a), 2 and 3551 *et seq.*; and (2) Possessing and Discharging a Firearm During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(l)(A)(i), 924(c)(l)(A)(iii), 2, and 3551 *et seq.* ECF No. 9.

On December 8, 2021, the Government filed a Superseding Indictment charging Defendant with: (1) Hobbs Act Robbery Conspiracy in violation of 18 U.S.C. §§ 1951(a) and 3551 *et seq.*; (2) Attempted Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951(a), 2, and 3551 *et seq.*; and (3) Possessing and Discharging a Firearm During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(l)(A)(i), 924(c)(l)(A)(iii), 2, and 3551 *et seq.* ECF No. 16.

1

Also on December 8, 2021, Defendant filed a motion requesting the Court: (1) dismiss Count Three, alleging a violation of 18 U.S.C. § 924(c), on the grounds attempted robbery is not a "crime of violence" within the meaning of the statute; (2) hold a *Wade* hearing to determine whether the witness identifications should be suppressed for unreliability; and (3) suppress search warrants for Defendant's home, phone, and social media accounts, on the grounds they lacked probable cause, and were overbroad and unparticularized. ECF No. 17. On March 8, 2022, the Court denied Defendant's first and second requests, and partially granted Defendant's third request to the extent the Court suppressed the warrant for Defendant's social media accounts. ECF No. 21.

On August 4, 2022, Defendant pled guilty pursuant to a plea agreement to one count of Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a).

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

**DISCUSSION**

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. In addition to the seven factors listed in 18 U.S.C. § 3553(a), a sentencing court must consider the Sentencing Guidelines. However, the Guidelines are merely advisory in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 264 (2005).

Nevertheless, the sentencing range recommended by the Sentencing Guidelines is the "starting point and the initial benchmark" in evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If a district court chooses to impose a sentence outside of the

Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). It now addresses each in turn.

II. **Analysis**

   A. **The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

   1. <u>Nature and Circumstances of the Offense</u>

In February 2021, Victim 1 contacted Andrew Cuadrado through Snapchat, a multimedia messaging app, and arranged to meet him near 2-7 Blue Slip in Brooklyn, New York on February 21, 2021, for the purpose of purchasing marijuana. Presentence Investigation Report ("PSR"), ECF No. 31, ¶ 4. When Victim 1 and Victim 2 arrived at the agreed-upon location, they were met by two masked individuals. *Id.* ¶ 5. The masked assailants entered the vehicle and instructed Victim 1 to drive to a secondary location, at which time Cuadrado, while holding

3

a gun to Victim 1's head, forced the victims to hand over their money. *Id.* After the victims complied, the masked assailants got into Victim 1's vehicle and drove away. *Id.*

On March 15, 2021, Victims 3, 4, and 5, who had arranged to sell marijuana edibles to Cuadrado, drove to 2-7 Blue Slip. *Id.* ¶ 6. Cuadrado and Defendant met the victims upon their arrival. *Id.* ¶ 7. At that point, Cuadrado entered the front passenger side of the vehicle and asked to see the marijuana edibles. *Id.* Victim 3 refused to produce the drugs and Cuadrado unsuccessfully attempted to take them by force. *Id.* After Cuadrado exited, Defendant took out a firearm and fired it into the vehicle. *Id.* Defendant hit Victim 4 in the right elbow and left lower leg before Victim 4 managed to drive away. *Id.*

2. Family and Personal Background

Defendant was born on June 4, 2002 in New York, New York to Roy Anthony Harvey and Marsha Rosalle. *Id.* ¶ 36. Defendant's father resides in Queens, New York and works as a head chef at a hospital in Jamaica, Queens. *Id.* Defendant's father has been married to Francis Harvey since Defendant's birth. *Id.* Defendant's mother also resides in New York City. *Id.* However, she is unable to work due to medical complications. *Id.* Defendant's mother was previously incarcerated while serving a sentence for Robbery in the First Degree. *Id.* Both of Defendant's parents are aware of Defendant's involvement in the instant offense and remain supportive of him. *Id.*

Defendant has several siblings, all of whom reside in the New York area. Defendant reported he has a good relationship with all his siblings, and he also noted all have remained supportive of him. *Id.*

Defendant reported he enjoyed a "regular" childhood in a middle-income household, and recounted always having access to the things he needed. *Id.* ¶ 38. Defendant was raised by his

mother intermittently in Atlanta, Georgia, until they settled in Middletown, New York when Defendant was in sixth grade. *Id.* Defendant also spent time living with his father in Queens. *Id.* At no point did Defendant report a history of abuse of any kind. *Id.*

Defendant has been in a romantic relationship with Jynasia Oliver since he was 14 years old. *Id.* ¶ 39. Jynasia lives in North Houston, Texas and is enrolled in college in Baltimore, Maryland. *Id.* Jynasia is aware of Defendant's instant offense and remains supportive of him.

### 3. Educational and Employment History

Defendant attended Grand Street Campus in Brooklyn, New York for ninth and tenth grade. *Id.* ¶ 46. Defendant reported he was often involved in altercations at school and struggled to follow instructions. *Id.* Defendant attributed his behavioral difficulties to the frequency with which he changed schools throughout his childhood. *Id.*

Defendant was in tenth grade during the onset of the COVID-19 pandemic and his school transitioned to remote learning in March 2020. *Id.* Defendant found it hard to remain engaged and eventually stopped attending his online classes altogether. *Id.* Defendant's instant arrest occurred before his school transitioned back to in-person learning. As such, Defendant never received his high school diploma. *Id.*

### 4. Prior Convictions

Defendant has no prior adult convictions. *Id.* ¶¶ 28-34. However, he has been arrested prior to the instant offense. *Id.* ¶ 34.[1]

Defendant has also incurred multiple disciplinary infractions while incarcerated for the instant offense at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. *Id.* ¶ 41.

---

[1] Defendant was arrested on May 25, 2021 for possession of stolen property after New York City Police Department ("NYPD") officers observed Defendant riding a moped on the sidewalk and conducted a background check on the moped's plates, which revealed it had been reported stolen the previous day. *Id.*

Between August 2021 and December 2021, Defendant was involved in several disciplinary incidents including: (1) possessing a dangerous weapon, (2) interfering with Security devices, (3) possessing an unauthorized item, (4) possessing a hazardous tool, and (5) being insolent to a staff member, which all resulted in sanctions. *Id.*

5. <u>Medical and Mental Health</u>

Defendant has no history of health, mental, or emotional problems. *Id.* ¶ 43. However, at the suggestion of Defendant's school counselor, Defendant was taken to therapy for anger management issues from age 9 to 12. *Id.*

6. <u>Substance Abuse</u>

Defendant began experimenting with various drugs and alcohol at a very young age. Defendant began using marijuana daily at the age of 12, and Percocet daily at the age of 15. *Id.* ¶ 45. Defendant began taking ecstasy and molly in social settings beginning at the age of 13. *Id.* Defendant also reported drinking alcohol four to five times per month since the age of 12. *Id.*

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, justly punishes him for this offense, and seeks to deter others from engaging in similar acts. In

particular, the Court's sentence specifically seeks to deter this Defendant from committing future crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Attempted Hobbs Act Robbery in violation of 18 U.S.C. § 1951(a). Defendant faces various penalties for having committed this offense, including terms of imprisonment and supervised release, in addition to fines and a special assessment.

Defendant faces a maximum term of imprisonment of 20 years, and no minimum term of imprisonment. 18 U.S.C. § 1951(a). Pursuant to 18 U.S.C. § 3583(b)(2), Defendant faces a term of supervised release of not more than three years. Furthermore, the Court may impose a fine of not more than $250,000.00 pursuant to 18 U.S.C. § 3571(b). Defendant also faces forfeiture as set forth in the Indictment and in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The Court is also required to impose restitution in an amount to be determined by the Court pursuant to 18 U.S.C. §§ 3663A and 3664, as well as a mandatory special assessment of $100.00 per court in accordance with 18 U.S.C. § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

All parties agree Defendant has a total adjusted offense level of 29. Probation calculates Defendant has a criminal history score of four, a criminal history category of III, and thus a

recommended Guidelines range of between 108 and 135 months' imprisonment. *See* PSR Addendum ¶¶ 33, 57. The Government, on the other hand, calculates Defendant has a criminal history category of II, which results in a recommended Guidelines range of imprisonment of between 97 and 121 months. Gov't Mem. at 3, ECF No. 33. As the Government notes, the defense stipulated to this calculation pursuant to the plea agreement. *Id.*

The applicable Guideline for Attempted Hobbs Act Robbery offenses in violation of 18 U.S.C. § 1951(a) is USSG §2B3.1. This provision provides a base offense level of 20. USSG §2B3.1. Seven levels are added pursuant to USSG §2B3.1(b)(2)(a) because a firearm was discharged during the commission of the offense. Four levels are added pursuant to USSG §2B3.1(b)(3)(b) because a victim sustained serious bodily injury in the commission of the offense. One additional level is added pursuant to USSG §2B3.1(b)(6) because the object of the offense was the taking of a controlled substance, specifically, marijuana edibles. This results in a subtotal adjusted offense level of 32. The offense level is decreased by two levels pursuant to USSG §3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility for the offense. The offense level is decreased by one additional level pursuant to USSG §3E1.1(b) because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty. This results in a total adjusted offense level of 29. *See* PSR ¶¶ 15-27.

Defendant has no adult criminal convictions apart from the instant offense. Therefore, Probation assesses Defendant has a criminal history score of four because Defendant has two prior juvenile adjudications and committed the instant offense while under a criminal justice sentence. *See* PSR Addendum ¶¶ 31-33. This calculation results in a criminal history score of four and a criminal history category of III. *Id.* ¶ 33. Based upon a total adjusted offense level of 29 and a criminal history category of III, the recommended Guidelines range is between 108 and

135 months' imprisonment. Probation recommends the Court impose a sentence of 108 months' imprisonment to be followed by a term of two years' supervised release with special conditions. Probation's Revised Recommendation at 1.

The Government's recommendation differs because it calculates Defendant has a criminal history category of II, as opposed to a criminal history score of III. Based upon a total adjusted offense level of 29 and a criminal history category of II, the recommended Guidelines range is between 97 and 121 months' imprisonment. The Government submits a sentence within the recommended Guidelines range of 97 to 121 months' imprisonment is sufficient but not greater than necessary under the circumstances in this case. Gov't Mem. at 5. The Government raises several points in support of its recommendation, including (1) the egregious nature of the underlying offense; (2) the need to impose a sentence with a significant, specific deterrent effect with respect to this Defendant; (3) the concerning nature of Defendant's uncharged conduct; (4) the need to promote respect for the law and deter others from partaking in violent offenses; and (5) Defendant's failure to demonstrate any personal improvement while in custody at the MDC. *Id.* at 3-4. The Government also notes Defendant has committed multiple crimes while incarcerated and has chosen not to participate in any educational programs or otherwise seek rehabilitation. *Id.* at 4.

While the defense stipulated to the Guidelines calculation provided by the Government and in accordance with the plea agreement, they urge the Court to impose a downward variance. The defense emphasizes Defendant's relatively young age and the tumultuous experience Defendant faced as a student during the COVID-19 pandemic. Def. Mem. at 1, ECF No. 32. A collection of letters submitted by Defendant's loved ones on his behalf portray a young man who loved his family and football and held ambitions of mentoring other children in the sport he was

so passionate about. Def. Mem. at 1-4. The Court has reviewed each of these submissions and thanks Defendant's family and friends for their continued support of Defendant. The Court also recognizes the detrimental effect the transition to remote learning has had on our nation's students. The Court has also paid particular attention to the ways in which the COVID-19 pandemic eroded many of the social structures upon which school-aged students, including Defendant, relied during a critical period of their development. The Court has carefully considered these factors. The Court's sentence balances Defendant's age and history, on the one hand, alongside the grievous actions he took, which demonstrated very little regard for the lives of either his victims or any passersby during the commission of the offense.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5). The defense argues the Court should consider proposed Guidelines amendments, which the United States Sentencing Commission submitted on April 27, 2023, and which will take effect in November 2023 absent Congressional action. Def's Supp. Mem., ECF No. 38 at 1. Were the proposed Guidelines presently in effect, Defendant would not receive points for committing an offense while subject to another criminal justice sentence. *Id.* Therefore, under the proposed amendments, Defendant's criminal history category would be reduced from III to II, and his recommended Guidelines range would be 97 to 121 months' imprisonment as opposed to the recommended range of 108 to 135 months he faces today, as indicated in the Addendum to the PSR. *Id.* While the Court notes the amendments are merely proposals and not presently in effect, the Court has carefully reviewed the proposed amendments and has considered their applicability to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7).

Restitution in this case is mandatory pursuant to 18 U.S.C. § 3663A. However, restitution is presently indeterminable as the victims in this case do not wish to provide victim impact statements nor do they request restitution. Nevertheless, the Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after it imposes sentence to determine the specific amount Defendant owes to each victim.

## CONCLUSION

For the reasons set forth above, the Court determines a sentence of 108 months of incarceration to be followed by two years of supervised release with special conditions, restitution in an amount to be determined by the Court, forfeiture in accordance with the terms set forth in the Indictment, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 24, 2023
       Brooklyn, New York

12